

556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 www.brewingtonlaw.com

| | |
|---|---|
| **Frederick K. Brewington** | **Oscar Holt III** |
| Albert D. Manuel III | Of Counsel |

May 24, 2021

*VIA ELECTRONIC CASE FILING*
Honorable Denis R. Hurley
United States District Court Judge
United States District Court
Eastern District of New York
Long Island Federal Courthouse
100 Federal Plaza
Central Islip, New York 11550

                Re: *Nunez v. Village of Rockville Centre, et.al.*
                     Docket No.: CV-18-4249 (DRH)(SIL)

Dear Judge Hurley:

     We are the attorneys representing the Plaintiff in the above referenced matter. We submit this single response to the three letters filed by the respective Defendants each of which requests a Pre-Motion Conference. We thank the Court for allowing us to provide a consolidated letter in response to document filed by Defendants. We apologize to the Court, as this letter had been prepared in a timely fashion, and we erroneously believed that this letter had been previously filed.

     Plaintiff, Luis A. Nunez is a Hispanic-American man. On or about August 4, 2016 at about 11:30 p.m., while at the intersection of Sunrise Highway and Grand Avenue in Baldwin, New York, Plaintiff was riding his motorcycle and was stopped at a red light when Officer Anthony Federico abruptly pulled his Village of Rockville Centre police SUV in front of him, nearly striking Plaintiff. Officer Federico emerged from his vehicle with his gun drawn and pushed Plaintiff and his motorcycle causing them both to fall to the ground. After being pushed onto the ground, while having a gun pointed at him, Plaintiff put his hands up and was forced to lay face down on the roadway. He was then subjected to verbal abuse by Police Officer Federico as trucks and cars passed dangerously close to him. As Plaintiff asked what was going on he was told to "shut the fuck up" and told by Officer Federico that he was going to "ruin [his] fucking life." Plaintiff was handcuffed by Officer Federico and remained laying on the ground. During the time that Plaintiff remained on the ground at the scene of his wrongful arrest, multiple police arrived on the scene including Defendants Siraco and Ruvolo and made comments about his wrongful treatment, but none of the officers took any action to intervene or address the violations which he was being subjected to. Mr. Nunez was taken to the Nassau County First Precinct, cuffed, and placed in a holding cell. While

in the holding cell, Officer Federico taunted Plaintiff and boasted to other police officers of how he "took" Mr. Nunez "down", like he was hunting a wild animal. Plaintiff was then charged with violations of law, including the Felony crime of Assault on a Police officer. The charge was a total fabrication and Plaintiff was falsely accused of other crimes and infractions. Plaintiff was arraigned on or about August 5, 2016, at which time $25,000 bail was set. Plaintiff was jailed for approximately seven (7) days before being eventually released. Plaintiff was required to attend court proceedings and charges were continued, including notices for the matter to be presented to the Grand Jury of Nassau County. All the named Defendants supported and engaged in actions which furthered the wrongful prosecution of Plaintiff. During that time, the District Attorney attempted to convince Plaintiff and his attorney that the arresting officer was an Officer Murphy and not Officer Federico. All along, Plaintiff's attorney and Plaintiff informed the District Attorney of his innocence, that Plaintiff was the victim in this case, and that Officer Federico violated Plaintiff's rights. After numerous demands that Plaintiff plead guilty to crimes which Plaintiff refused to do, more than a year after the false arrest, on August 14, 2017 the District Attorney dismissed all charges against Plaintiff.

## APPLICABLE STANDARD OF REVIEW

"A motion for summary judgment may be granted only when there is no genuine issues of material fact remaining for trial and the moving party in entitled to judgment as a matter of law." *Tomika v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d. Cir. 1995). The role of the court on such a motion "is not to resolve the disputed issues of fact, but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11(2d Cir. 1986); (citations omitted). The burden on showing the absence of a factual dispute rests on the party seeking summary judgment. *See Adickes V. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, L.Ed.2d 142 (1970); *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996).

In assessing the record to determine whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Chambers v. TRM Copy Center Corp.*, 43 F.3d 29, 36 (2d Cir. 1994)(citations omitted). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.* at 37. "[T]he court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact .... Resolutions of credibility conflicts and choices between conflicting versions of facts are matters for the jury, not for the court on summary judgment.. *Cerbilli v. City of New York*, No 99-CV-6846, 2008 WL 4449634, at *5 (E.D.N.Y. Oct. 1, 2008) *(quoting United States v. Rem*, 38 F.3d 634, 644 (2d. Cir. 1994)). See also *Cerbilli* at *11-*12 ("[T]he existence of a genuine issue of material fact precludes the court from granting summary judgment on the basis of qualified immunity").

## I. THE ROCKVILLE CENTRE DEFENDANTS
### (Village, John Siraco and John Murphy)

The Rockville Centre Defendants assert four basic issues in support of their proposed motion. The first arises from the mistaken claim that since Plaintiff did not file a timely notice of claim, he cannot assert his New York State law claims. As an initial point, after the dismissal of all charges against Mr. Nunez on August 14, 2017, he filed a Notice of Claim against the Village of Rockville

Centre. On April 5, 2018, the Honorable R. Bruce Cozzens, Jr. (hereinafter "Judge Cozzens") issued an Order in response to Plaintiff's petition for leave to file a late Notice of Claim. In his Order, Judge Cozzens provided in part: "[i]n the instant matter, the Court finds the petitioner has demonstrated a reasonable excuse, that the respondent acquired actual knowledge of the facts constituting the claim and the respondent has not been prejudiced in maintaining its' defense." Thus, Mr. Nunez was granted leave to file a late Notice of Claim. Following the grant of Plaintiff's Motion to file a Late Notice of Claim, Defendants filed a Notice of Appeal. Thereafter, despite having placed this matter in appeal status, on June 4, 2018, Defendants exercised their rights pursuant to General Municipal Law § 50-H and conducted an examination of Mr. Nunez in regards to the claims asserted in the instant matter. Knowing that they had exercised their rights to take the §50-H hearing, on December 12, 2018, Appellants submitted its brief and Record on Appeal to challenge Judge Cozzens' Order granting Mr. Nunez leave to file a late Notice of Claim.

While not before the Deciding Court, the Appellants did not disclosed to the Appellate Division that on June 4, 2018, they conducted an oral examination of Mr. Nunez, which he attended and fully complied with. That transcript, which contains 165 pages of examination was done, prior to the filing of the Federal Law Suit, which is pending in the Eastern District of New York under 18-cv-04249, (DRH)(SIL), and was filed on 07/26/18. Since oral depositions were taken by counsel for Defendants it is clear that the defect in the timeliness was waived and the service must be deemed valid (see *Verley v. City of New York*, 11 A.D.2d 1015, 206 N.Y.S.2d 435). A municipality waives any defect by taking oral depositions of the plaintiffs (see, General Municipal Law § 50–e[3][c]; *Mahoney v. Town of Oyster Bay*, 71 A.D.2d 879, 419 N.Y.S.2d 652; cf., *Matter of Moore v. New York City Hous. Auth.*, 35 A.D.2d 553, 313 N.Y.S.2d 176). The fact that Defendants have engaged in active waiver serves to defeat their argument.

While Plaintiff has not formally pleaded a *Monell* claim in this case, Police in Rockville Centre knew that any claims of wrongful action would not result in any form of serious investigation, no less findings or disciplines against them. The failures and practices of Defendant Rockville Centre, more than support a finding of *Monell* liability. The failure to document and conduct investigations of wrong doing by its own officers was proven through the depositions. Testimony from Defendants revealed they did not provide anything in writing as to complaints made against them, and were not required to provide anything in writing as to their statements as to what occurred. In fact, even when one officer was indicted for felony offenses, he was never questioned as to the civilian complaints. Officers were not subjected to any retraining or meaningful process to evaluate and change their behaviors. A municipality can be held liable under Section 1983 when it is, "alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference" to the rights of its citizenry because it failed to act when "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*. 72 F.3d 1040, 1049 (2d Cir. 1995); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)

The False Arrest, Malicious Prosecution, Failure to Intervene, Abuse of Process and Fabrication of Evidence claims against Defendants Siraco and Murphy are supported by the record in this case. Defendant Murphy provided a fabricated Supporting Deposition/Bill of Particulars where he swore that said document was filled out by him and claimed that he had direct knowledge of what was stated in the document, which was false. He knowingly falsely signed the Supporting Deposition/Bill of Particulars as the Issuing/Arresting Officer despite his awareness that he was not

being truthful. Murphy is an investigating official. He signed false accusatory instruments to which he testified, which alleged facts he did not observe nor did he check. Those statements were material as they represented an element of each offense. *Garnett v. Undercover Officer* C0039, 838 F.3d 265, 275-276 (2d Cir. 2016); *Rentas v. Ruffin*, 816 F.3d 214, 222-23 (2d Cir. 2016). And there is no question the Mr. Nunez suffered a deprivation of liberty as a result of Murphy's false allegations. *Wellner v. City of New York*, 393 F. Supp. 3d 388, 395-96 (S.D.N.Y. 2019). He, like all the Defendant Officers took affirmative actions to bring the charges and continue the prosecution of Plaintiff. "Malicious prosecution occurs when (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Cameron v. City of New York*, 598 F.3d 50, 63(2d Cir. 2010). Mr. Nunez must also establish that he suffered a post-arraignment deprivation of liberty. *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

Defendant Siraco testified that he was directly involved in the arrest, transporting and continued detention of Plaintiff. He engaged in behavior intended to further the false narrative and continue and move forward the malicious prosecution of Plaintiff. Each Defendant took actions intended to further harm Plaintiff knowing that the story and information leading up to Plaintiff's arrest and prosecution lacked Probable Cause or factually support. To prevail on a fabrication of evidence claim, the plaintiff must establish that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer* C0039, 838 F.3d 265, 279 (2d Cir. 2016) (*citing Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). The existence of probable cause to arrest (lacking in this case) does not defeat a fabrication of evidence claim. *Garnett,* 838 F.3d at 277-78. Defendant Siraco had the opportunity and responsibility to prevent the wrongful detainment, and abuse of process against Plaintiff because he was put on notice of the wrongful actions of Defendant Federico at the scene of the incident.

## II. THE NASSAU COUNTY DEFENDANTS
### (Nassau County, Michael Dolan and Frank A. Ruvolo)

County Defendants provide few references to the factual record to support their request to file a motion. Detective Ruvolo was the Nassau County Detective investigating this felony case against Mr. Nunez. He was the person that obtained the "red light camera" video. In his deposition testimony he stated that based on his observation of what he was able to see in the video, he did not see a motorcycle running over Officer Federico, which was the basis for the Felony charge against Mr. Nunez. Under New York law, even if there was probable cause to arrest an individual, that does not necessarily mean there is probable cause to prosecute him. *Cox v. County of Suffolk*, 780 F.Supp. 103, 108 (E.D.N.Y.1991). If subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that the charges against the individual were groundless, probable cause would no longer exist. Once the video was obtained, the issue of probable cause was minimally placed in question, if not totally dis-proven. *See Coleman v. City of New York*, 177 F.Supp.2d 151, 158 (S.D.N.Y.2001) ("If subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that the charges against the individual were groundless, probable cause would no longer exist."), *aff'd*, 49 Fed. Appx. 342 (2d Cir.2002); *McDermott v. City of New York,* 1995 WL 347041, No. 94 Civ. 2145, at *5 (E.D.N.Y. May 30, 1995) Defendant Ruvolo actively

Honorable Denis R. Hurley
May 24, 2021
Page 5

instigated and encouraged the baseless prosecution of the Plaintiff on Felony Assault charges and other crimes and infractions.

Mr. Nunez does not maintain that either Defendant Dolan or Defendant Ruvolo engaged in excessive force or assault against him. However, like the Rockville Centre Defendants, both Dolan and Ruvolo were engaged in moving the prosecution of Mr. Nunez forward. Each claims that they were just using the information given to them by the Rockville Centre Defendants. Curiously, the Nassau Defendants allege in their Answer that, " If the Plaintiff sustained the damages alleged in the Complaint through any negligence, wrongdoing, recklessness and/or unlawful conduct other than that of the Plaintiff, such damages were caused by and resulted from the negligence, wrongdoing, recklessness and/or unlawful conduct of the co-defendants, Village of Rockville Centre, Village of Rockville Centre Police Department, Police Officer Anthony Federico, Police Officer John Siraco, Jr., and Police Officer John Murphy." The fact that they relied on false and unreliable information that they allege was caused not by them, but by the persons on whom they relied, does not relieve them of liability. This is true as to each of the claims raised by Plaintiff against Dolan and Ruvolo. Defendant Dolan claims that Defendant Federico told him that "a motorcycle didn't stop, and when he got to Grand Avenue, he got out of the car, stood in front of the motorcycle, and the motorcycle -- the throttle -- he hit the throttle and lunged out." Of course this is very different from what was reported by Federico and Murphy and in itself raises serious questions of fact. Defendant Dolan also admitted that in filling out the accident report, and Felony Complaint, which he signed, that he made no effort to get facts from Mr. Nunez and only relied on Defendant Federico. As to the accident report, his not getting information from both sides was contrary to his training. He was asked, "As a matter of fact, that's how you were trained, to get both sides of the story, right?" His response was "Yes." However, when asked, "[b]y filling out the MV-104 and attaching a signature to the Felony Complaint, were you supporting Mr. Nunez's prosecution?" Defendant Dolan responded, "Yes." An answer that provides more factual support to the malicious prosecution claim.

A defense of qualified immunity will only extend to protect an official, where his or her conduct "does not violate clearly established statutory or constitutional rights, of which a reasonable person would have known." *Zahre v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified Immunity should not attach as to either Ruvolo or Dolan. Nothing in the record supports that either Defendant Ruvolo or Dolan did not know that creating documents with false information in them was not contrary to established law. In fact, their testimony is the opposite. Such officials are not entitled to qualified immunity if such officials' actions "violate clearly established law," and if it was not "objectively reasonable" for them "to believe that [their] action[s] did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). They acknowledge that it is their obligation to create accurate and truthful documents relative to the charging and prosecution of Mr. Nunez. Then they admit that they don't know if the documents they created and signed were accurate and/or truthful.

Clearly all State claims are intertwined with Plaintiff's Federal claims, as they come from the same nucleus of facts and not one of the claims is independent from the facts related to the federal claims. As such, it would be inefficient and a waste of judicial resources to fail to grant pendent jurisdiction over the State claims. The wrongful perpetuation of false felony charges are more than sufficient to allow the IIED claim to be determined by a jury.

## III. DEFENDANT ANTHONY FEDERICO

Paramount to the evaluation of Defendant Federico's claims is that they are factually in dispute with the facts provided by Plaintiff and in fact, are disputed by the information Federico has given to other co-defendants. the Court in *Terranova v. Torres*, found that in excessive force cases under the Fourth Amendment, **summary judgment should rarely be granted**, even though a jury might ultimately reject the Plaintiff's version of the fact. *Id.* at 603 F.Supp.2d 630, 631, 632 & n.3 (S.D.N.Y. 2009)(*emphasis added*). Summary Judgment would be completely inappropriate in this matter. Consistent with his actions on the abuse of Plaintiff, Defendant Federico now asserts that it is only his view and his facts that control. This, of course is misplaced. Mr. Nunez was accused with twelve (12) separate charges. Those charges included one felony, three misdemeanors, and eight violations/infractions. Every single one of those charges were dismissed and sealed. The Defendant must establish that probable cause existed to arrest Mr. Nunez for each charge. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). Plainly put, the Defendant cannot make any such showing.

In the instant case, the jury will be required to determine whether excessive force was used to effectuate the arrest in the whole context in which it happened; it will not be asked to slice it into individual pieces to determine whether any of those pieces standing alone constituted excessive force. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[The] proper application [of the test for reasonableness under the Fourth Amendment] requires careful attention to the facts and circumstances of each particular case...."). "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham, 490 U.S. at 395. Although Rule 56 allows a party to seek summary judgment on part of a claim, the reference to "part" is best understood as relating to either the entirety of liability, or damages, or at least a discrete element of damages. *See Hamblin v. British Airways PLC*, 717 F.Supp.2d 303, 306–09 (E.D.N.Y.2010). It does not permit elimination of particular facts from the jury's consideration.

Notably, excessive force can be found where little physical contact occurred between the Defendant police officer(s) and the plaintiff. *Kerman v. City of New York*, 261 F.3d 229 at 233, 239-40 (finding that officers' name-calling and threat to "blow [arrestee's] brains out" amounted to "verbal abuse [and] humiliation" which "might well be objectively unreasonable and therefore excessive"); see also *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (stating that "whether the constitutional line has been crossed depends on such factors as . . . whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (internal quotation marks omitted)). For cases in other circuits, *see Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (stating that "brandishing a cocked gun" in front of an individual's face lays "the building blocks for a section 1983 claim" even in the absence of physical injury); *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000) ("[H]olding [a] gun to a person's head and threatening to pull the trigger is a use of deadly force."). These cases are particularly helpful as the facts in this case include Defendant Federico admitting that he trained his gun on Mr. Nunez. Couple these facts with the use of the police SUV to almost hit Mr. Nunez and then the pushing of him from his motorcycle which was stationary, there is no question the Defendant's Federico attempt to avoid the exposure he created is a futile attempt.

      There are no claims that Defendant Federico can escape. This case rests on issues of credibility and compares the actions taken by Defendant Federico and how he tries to spin them, against the dismissal of every single charge on the merits, the clear facts articulated by Mr. Nunez and the multiple factual disputes which exist in the police records and different accounts given this same Defendant to other police in this case.

      In a sweeping conclusory sentence, Defendant Federico states "there is no evidence that Officer Federico fabricated any evidence in this matter." Of course Mr. Nunez disagrees with that statement and is prepared to set before the Court evidence to support his position. The Court only need to look at the "red light camera" video to see that a reasonable jury evaluating that "evidence" can see that fabrication saturates the false claims made against Mr. Nunez. The different version of what Mr. Nunez is alleged to have done and not done by the accounts offered by Defendant Federico are likewise supportive of Plaintiff. As set out in the Rockville Centre Defendants section of this letter, Plaintiff has the burden of proving the five elements of a fabrication of evidence claim. (See I. above) The existence of probable cause to arrest (lacking in this case) does not defeat a fabrication of evidence claim. *Garnett*, 838 F.3d at 277-78. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Similarly, it does not matter whether the fabricated evidence is admissible at trial – although it would be as Federico's sworn statements are based upon his claimed first hand observations. *Nnodimele v. Derienzo*, 2016 WL 337751, 2016 U.S. Dist. LEXIS 9881, at *37-38 (E.D.N.Y. Jan. 27, 2016) ("this conclusion would make little sense if *Ricciuti* required a showing that the alleged fabrication be likely to actually influence a jury's decision. Instead, *Ricciuti* is more naturally read as requiring that the fabrication be material—that is, of such a character that it would likely influence a jury's decision if a jury were to consider it.")

      Defendant Federico attempts to assert the very same Notice of Claim issue advanced by the Rockville Centre Defendants, however that too must fail as Defendant Federico was named in the Notice of Claim and when the attorney representing the Respondents questioned Mr. Nunez in the §50-H hearing, any arguments that could be asserted that the Notice of Claim was late were waived. In addition, contrary to that which is argued by Defendant Federico, although briefed by Mr. Nunez, the Honorable Appellate Division, Second Department did not consider the waiver issue. The Court explicitly stated, "Any references in the petitioner's brief to events occurring subsequent to the date of the order appealed from are not properly before this Court and have not been considered." (citations omitted)

      The Defendants should not be permitted to file their motions.

                                                                   Respectfully submitted,

                                                                   *Frederick K. Brewington*
                                                                   FREDERICK K. BREWINGTON

cc:    William P. Nolan, Esq. (via ecf)
        Andrew R. Fuchs, Esq. (via ecf)
        William J. Croutier, Jr., Esq. (via ecf)

FKB:pl