UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LUIS A. NUNEZ,

                               Plaintiff,

 - against -

VILLAGE OF ROCKVILLE CENTRE;
VILLAGE OF ROCKVILLE CENTRE POLICE
DEPARTMENT; NASSAU COUNTY; NASSAU
COUNTY POLICE DEPARTMENT; POLICE
OFFICER ANTHONY FEDERICO, Shield No.
2645, in his individual and official capacity;
POLICE OFFICER JOHN SIRACO, JR., Shield
No. 7945, in his individual and official capacity;
POLICE OFFICER JOHN MURPHY, Shield
No. 461, in his individual and official capacity;
SERGEANT MICHAEL DOLAN, Shield No.
8483, in his individual and official capacity;
DETECTIVE FRANK A. RUVOLO, Shield No.
7242, in his individual and official capacity,

                            Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:18-cv-4249 (DRH) (SIL)

**APPEARANCES**

**LAW OFFICES OF FREDERICK K. BREWINGTON**
Attorneys for Plaintiff
556 Peninsula Boulevard
Hempstead, NY 11550
By:    Frederick K. Brewington, Esq.

**HAMMILL, O'BRIEN, CROUTIER, DEMPSEY, PENDER & KOEHLER, P.C.**
Attorneys for Defendants Village of Rockville Centre, Village of Rockville Centre
Police Department, Police Officer John Siraco, Jr., Shield No. 7945, and Police
Officer John Murphy, Shield No. 461
6851 Jericho Turnpike, Suite 250
Syosset, NY 11791
By:    Rebecca J. Moulton, Esq.

**WILLIAM P. NOLAN, ESQ.**
Attorneys for Defendant Police Officer Anthony Federico, Shield No. 2645,
1103 Stewart Avenue, Suite 200
Garden City, NY 11530

**THOMAS A. ADAMS, ACTING NASSAU COUNTY ATTORNEY**
Attorneys for Nassau County, Nassau County Police Department, Sergeant Michael
Dolan, Shield No. 8483, and Detective Frank A. Ruvolo, Shield No. 7242
1 West Street
Mineola, NY 11501
By:   Andrew R. Fuchs, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Luis Nunez brings this civil rights action against Defendants Village of Rockville Centre ("Rockville Centre"), Village of Rockville Centre Police Department ("RCPD"), Nassau County, Nassau County Police Department ("NCPD"), Police Office Anthony Federico, Police Officer John Siraco, Jr., Police Officer John Murphy, Sergeant Michael Dolan, and Detective Frank A. Ruvolo under to 42 U.S.C. § 1983 and New York state law.  Presently before the Court are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Siraco, Murphy and Dolan's motions for summary judgment are denied as moot.  Rockville Centre, RCPD, Nassau County, NCPD, and Ruvolo's motions are granted.  Federico's motion is denied.

## BACKGROUND

The following facts, taken from the parties' Local Rule 56.1 statements,[1] are undisputed unless otherwise noted.  The Court limits its recitation to the actions of

---

[1]    *See* Rockville Centre Rule 56.1 Statement ("RVC 56.1") [DE 65-3]; Federico Rule 56.1 Statement ("Federico 56.1") [DE 69-4]; Pl. Resp. to RVC 56.1 [DE 66-2]; Pl. Resp. to Federico 56.1 [DE 70-2]; Pl. 56.1 Counter Statement to RVC and Federico [DEs 66-2, 70-2]; RVC 56.1 Reply [DE 67-2]; Federico 56.1 Reply [DE 71-1]; Nassau

Defendants Rockville Centre, Nassau County, Federico, and Ruvolo as Plaintiff does not meaningfully contest the entry of summary judgment in favor of RCPD, NCPD, Siraco, Murphy, and Dolan.  *See infra* Discussion Section I.

The Village of Rockville Centre is a municipal corporation located in New York State that has its own police department.  (Nassau 56.1 ¶¶ 2–3).  Nassau County, another New York municipal corporation, likewise has its own police department.  (*Id.* ¶¶ 4–5).  The Sunrise Highway is a roadway with a section that passes through Rockville Centre and Baldwin, a hamlet in Nassau County.  The RCPD has jurisdiction over Rockville Centre; the NCPD has jurisdiction over Baldwin.  (Pl. Opp. to RVC at 5 [DE 66-1]).

On the night of August 4, 2016, Plaintiff Luiz Nunez drove his motorcycle on the Sunrise Highway toward Baldwin, passing through an area of Rockville Centre patrolled by RCPD Officer Federico.  (Federico 56.1 ¶¶ 1–4).  Plaintiff and Defendants offer irreconcilable descriptions of the events that night.

As Plaintiff tells it, he was driving 40 miles-per-hour ("mph"), 10 mph over the 30-mph limit.[2]  (Pl. Resp. to RVC 56.1 ¶ 52).  Between 11:00 PM and 11:30 PM, he stopped at a red light at the Sunrise Highway's intersection with Grand Avenue in Baldwin.  (*Id.* ¶ 1).  As Plaintiff waited, Federico drove his marked police SUV up to

---

Cnty. 56.1 Statement ("Nassau 56.1") [DE 73-2]; Pl. Resp. to Nassau 56.1 [DE 74-2]; Pl. 56.1 Counter Statement to Nassau [DE 74-2]; Nassau Cnty. 56.1 Reply [DE 75-1].

[2]    While Plaintiff testified that he drove 40 mph in a 30-mph zone, he also contends, "[t]here has been no evidence that established what the speed limit is at various points on Sunrise Highway, but, upon information and belief, most of Sunrise Highway alternates between 40 and 45 mph."  (Pl. Resp. to RVC 56.1 ¶ 52).

Plaintiff's motorcycle, turned on his police lights as he approached from the side, and stopped at an angle in front of Plaintiff, blocking the lane.  (Pl. Resp. to RVC 56.1 ¶¶ 7, 56; Pl. Resp. to Federico 56.1 ¶¶ 12–18; Pl. Resp. to Nassau 56.1 ¶ 22).  Federico immediately exited his vehicle and "pushed" or "threw [Plaintiff] and the motorcycle to the ground."  (Pl. Resp. to RVC 56.1 ¶¶ 8–9, 57, 59; Pl. Resp. to Nassau 56.1 ¶¶ 23–24).  Plaintiff's right hand, which had been resting on the throttle, then "jerked," causing the motorcycle to "jump 'not even a foot.'"  (Pl. Resp. to RVC 56.1 ¶¶ 8, 57; Pl. Resp. to Nassau 56.1 ¶¶ 23 (quoting Pl.'s Section 50-h Deposition Testimony at 89:24–90:2 ("Pl. 50-h Tr."), Ex. K [DEs 66-5, -17] to Declaration of Frederick K. Brewington ("Brewington Decl.") [DE 66])).  Plaintiff does not know whether the motorcycle "made contact with" Federico but "doesn't see how [it] could have caused harm" since it went left – away from Federico.  (Pl. Resp. to RVC 56.1 ¶ 10, 58 (quoting Pl. 50-h Tr. at 97:9–17)).  They fell to the ground.  (*Id.* ¶ 9).  Plaintiff ""immediately stood up" but when Federico pointed his gun at him, he promptly complied with Federico's orders to get back down on the ground.  (Pl. Resp. to RVC 56.1 ¶¶ 12; Pl. Resp. to Federico 56.1 ¶ 17; RVC 56.1 Reply ¶ 16).

As Defendants tell it, Plaintiff was doing 80 mph, had a suspended driver's license—an ordinary license, not a motorcycle license—and had an active bench warrant out for his arrest.  (Federico 56.1 ¶¶ 10–11; Def. Federico Deposition Testimony at 46:13–47:2 ("Federico Dep. Tr."), Ex. N [DEs 66-9 to -11] to Brewington Decl.).  Federico, in a marked police SUV, observed Plaintiff and followed him for one-to-two miles before instituting a stop after Plaintiff waited at the Sunrise Highway-

Grand Avenue red light.  (RVC 56.1 ¶¶ 53–55).  Federico pulled his marked SUV in front of Plaintiff's motorcycle at an angle with its police lights on and exited his vehicle.  (RVC 56.1 ¶ 7; Federico 56.1 ¶ 12; Nassau 56.1 ¶ 22).  Plaintiff "hit the throttle" in an attempt to flee, "causing the motorcycle to jump approximately one (1) foot forward" and striking Federico in the left leg and shin.  (RVC 56.1 ¶¶ 8, 58; Federico 56.1 ¶¶ 13–15; Nassau 56.1 ¶¶ 23–25; RVC 56.1 Reply ¶ 12).  Federico pushed Plaintiff away from him and the two fell to the ground.  (RVC 56.1 ¶ 59).  Plaintiff immediately jumped back up, causing Federico to point his gun at Plaintiff and to direct Plaintiff to back to the ground.  (RVC 56.1 ¶¶ 9, 11–12; Federico 56.1 Reply ¶ 16).  Plaintiff ultimately complied.  (RVC ¶ 12; Federico 56.1 ¶ 17).

A red-light camera records the intersection of Sunrise Highway and Grand Avenue.  The parties have supplied the footage capturing the events in question.  (*See* Ex. A [DE 66-3] to Brewington Decl.).  They disagree on what it shows, (Pl. Resp. to RVC 56.1 ¶ 18), and the Court, having independently reviewed the footage, cannot say it unequivocally supports one side or the other.  One party's testimony even aligns with the Court's view – that the poor video quality prevents any determination on what happened.  (*See* RVC 56.1 ¶¶ 153, 155 (citing Dep. Testimony of Def. Frank Ruvolo, ("Ruvolo Tr."), Ex. U [DE 65-24] to Brewington Decl.)).

The parties' recollections from that point forward generally harmonize. Federico handcuffed Plaintiff and requested backup.  (RVC 56.1 ¶ 13).  Several other police officers—both from Rockville Centre and Nassau County's Police

Departments[3]—arrived; Plaintiff admits they (not including Federico) were "very respectful" to him. (*Id.* ¶¶ 14–15, 60–62, 66). Federico requested an ambulance and was taken to the hospital – he had suffered "a contusion and abrasion to his shin." (*Id.* ¶¶ 65, 67–68).

The officers took Plaintiff to the Nassau County First Precinct in Mineola, New York. (*Id.* ¶¶ 63 66; Federico 56.1 ¶¶ 20–21, 23–24). Federico later arrived at the First Precinct, too, in order to meet the Nassau County detective assigned to the matter: Defendant Detective Frank Ruvolo. (RVC 56.1 ¶¶ 69, Nassau 56.1 ¶ 52, 54–56). Plaintiff and Federico did not speak to each other, but Plaintiff alleges he overhead Federico "bragg[ing] about how he had taken [Plaintiff] 'down' like Federico was a hero or like [Plaintiff] was an animal." (RVC ¶ 70; Pl. 56.1 Counter Statement to RVC and Federico ¶ 20). Federico swore out the criminal complaint against Plaintiff drafted by Ruvolo which charged Plaintiff with assault in the second degree, aggravated unlicensed operation of a motor vehicle in the second and third degrees, speeding, driving without a license, driving an unregistered vehicle, and driving without insurance. (RVC 56.1 ¶¶ 69–70, 146; Federico 56.1 ¶¶ 27–28; Nassau 56.1 ¶¶ 57, 59). Plaintiff was arraigned on August 5, 2016 and spent the next seven-to-eight days in the Nassau County jail. (Federico 56.1 ¶ 26; Decl. of Rebecca Moulton ¶ 29 [DE 65-1]).

---

[3]    As Federico first encountered Plaintiff in Rockville Centre but made his arrest in Baldwin, both municipalities' police departments became involved.

In September 2016, roughly one month after the incident, Ruvolo obtained a copy of the red-light camera footage. (Pl. 56.1 Counter Statement to Nassau ¶ 4). Later, in passing, Ruvolo showed the footage to Federico. (*Id.* ¶ 5; Ruvolo Tr. at 88:9–23). Their whole conversation at the time consisted of: "Hey, I got the video, you want to take a look?" (Ruvolo Tr. at 88:9–23). In December 2016, Ruvolo forwarded the footage to the prosecutors. (Pl. Counter Statement to Nassau ¶ 6). Even though Federico "instructed the [Nassau County] District Attorney's Office on multiple occasions that he wanted [Plaintiff] to be charged with a felony and to serve jail time," the District Attorney never presented the charges to a grand jury. (Pl. 56.1 Resp. to RVC ¶¶ 25–26). On August 14, 2017, Plaintiff's charges were dismissed on speedy trial grounds. (Federico 56.1 ¶ 30).

Plaintiff commenced this action on July 26, 2018. [DE 1]. The matter proceeded directly into discovery. By September 10, 2021, all Defendants had filed their motions for summary judgment. [DEs 65, 69, 73].

## LEGAL STANDARD

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the

light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).   Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]."   *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried.   *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).   The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v.*

*Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).  "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

In opposing the motions, Plaintiff dropped defendants and claims.  For ease of analysis, the Court's decision is split between two sections.  The first addresses (I) Defendants Siraco, Murphy, Dolan, Rockville Centre Police Department, and Nassau County Police Department.  The second addresses each remaining defendant separately: (II.A) Ruvolo, (II.B) Nassau County, (II.C) Federico, and (II.D) Rockville Centre.

## I.   Defendants Siraco, Murphy, Dolan, Village of Rockville Centre Police Department, and Nassau County Police Department are Dismissed

Plaintiff admits that Siraco, Murphy, and Dolan had "minimal involvement in [Plaintiff's] arrest."  Pl. Opp. to RVC at 1.  After Defendants moved for summary

judgment, the parties filed a Stipulation of Dismissal dropping all claims against Siraco, Murphy and Dolan, [DE 68], which the Court so ordered.  *See* Order dated Aug. 17, 2021.  Siraco, Murphy and Dolan no longer remain defendants in this action and, accordingly, their motions for summary judgment are denied as moot.

Plaintiff sues the Village of Rockville Centre Police Department and the Nassau County Police Department.  Plaintiff states he "will discontinue the[] claims [against them] if [Rockville Centre and Nassau County] confirm[] that they are the municipal policymaker[s] for the police department[s] and that by suing [Rockville Centre and Nassau County], the RCPD [and NCPD] are included."  Pl. Opp. to RVC at 2; Pl. Opp. to Nassau at 2 [DE 74].  Defendants do not respond.  Regardless, a town police department is a non-suable entity under New York law.  *Arum v. Miller*, 331 F. Supp. 2d 99, 107 (E.D.N.Y. 2004); *see* Village of Rockville Centre Code § 45-1.  The same is true of a county's police department.  *Harris v. Nassau Cnty.*, 2016 WL 3023265, at *12 (E.D.N.Y. May 24, 2016) ("[Nassau County Police Department] is a non-suable entity"); *Daly v. Ragona*, 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013) (Bianco, J.) (same); *see* Nassau Cnty. Admin. Code § 8-1.0, 8-4.0.  Such departments are "administrative arms of a municipality" without "a legal identity separate and apart from the municipality."  *Ayers v. Suffolk Cnty. Dist. Att'y Off. Inc.*, 2020 WL 6363898, at *3 (E.D.N.Y. Oct. 28, 2020) (internal quotation marks omitted).  Because they cannot sue or be sued, *id.*, summary judgment is granted in their favor.

## II.     Remaining Defendants and Claims

While Plaintiff opposes summary judgment in favor of the other Defendants,
he has trimmed the number of claims against them.  For example, he admits "that
his state law claims, with the exception of his malicious prosecution claim, are not
viable."  Pl. Opp. to Nassau at 1.  Plaintiff helpfully includes in his motion opposition
papers a distillation of his case against the four remaining Defendants: (A) against
Ruvolo, he pursues "malicious prosecution claims pursuant to § 1983 and state law,"
Pl. Opp. to Nassau at 3, 8; (B) against Nassau County, he pursues a "malicious
prosecution claim pursuant to state law," *id.*; (C) against Federico, he "pursues
claims . . . for false arrest," "excessive force, abuse of process, [and] fabrication of
evidence" pursuant to § 1983, as well as a "malicious prosecution claim pursuant to
§ 1983 and state law," Pl. Opp. to RVC at 2, 12; and (D) against Rockville Centre, he
"pursues a state law malicious prosecution claim," *id.*

### A.     Claims Against Ruvolo

Plaintiff continues his "malicious prosecution claims pursuant to § 1983 and
state law" against Ruvolo.  Pl. Opp. to Nassau at 3, 8.  To sustain his § 1983 malicious
prosecution claim, Plaintiff must demonstrate Ruvolo's conduct was tortious under
New York state law and resulted in a constitutionally cognizable deprivation of
liberty. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  Under New York law, a
prima facie malicious prosecution claim requires "(1) the commencement or
continuation of a criminal proceeding by the defendant against the plaintiff, (2) the
termination of the proceeding in favor of the accused, (3) the absence of probable

cause for the criminal proceeding and (4) actual malice." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 760 (N.Y. 2016) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 457 (N.Y. 1975)).

Before turning to the merits, Plaintiff advises that "[i]t is important to note that [a] state law malicious prosecution claim[] [is] governed by a far lower evidentiary standard" than its § 1983 counterpart. Pl. Opp. to Nassau at 6 (citing *Subirats v. D'Angelo*, 938 F. Supp. 143, 147 (E.D.N.Y. 1996) and *Johnson v. City of New York*, 940 F. Supp. 631, 638 (S.D.N.Y. 1996)). His cited cases do not stand for this proposition. Rather, *Subirats* and *Johnson* recognized a more "rigorous analysis" applies to § 1983 claims because federal law layers an additional element on top of the state tort prima facie case – namely, a deprivation violating constitutional rights. *Phelps v. City of New York*, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) ("A malicious prosecution claim brought pursuant to Section 1983 requires the plaintiff to allege and prove the same elements as the state law claim, and, as an additional element of his claim, 'some post-arraignment deprivation of liberty that rises to the level of a constitutional violation.'" (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995))). Nor do these cases suggest a lower-than-usual evidentiary standard applies to the cause of action's state law elements. The New York Court of Appeals has aptly warned otherwise: "The law . . . places a heavy burden on malicious prosecution plaintiffs[.]" *De Lourdes Torres*, 26 N.Y.3d at 760 (quoting *Smith–Hunter v. Harvey,* 95 N.Y.2d 191, 195 (N.Y. 2000)).

Turning to the merits, Plaintiff begins by conceding Ruvolo did not initiate the criminal proceedings. He instead asserts a "malicious continuation" of prosecution claim. Pl. Opp. to Nassau at 2 ("[Ruvolo and Nassau County] were responsible for continuing the malicious prosecution against Plaintiff . . . ."); *e.g.*, *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 36–37 (E.D.N.Y. 2015). Under New York law, the "[c]ontinued prosecution after facts sufficient to exonerate the accused have been provided may give rise to an action for malicious prosecution." *Weiner*, 90 F. Supp. 3d at 34–35 (quoting *Dirienzo v. United States,* 690 F. Supp. 1149, 1157–58 (D. Conn. 1988) (applying New York law)); *Feinberg v. Saks & Co.*, 83 A.D.2d 952, 953 (N.Y. App. Div., 2d Dep't 1981), *modified*, 56 N.Y.2d 206 (N.Y. 1982).

"[O]nce an arrestee is formally charged," however, an "arresting officer is generally no longer responsible for the prosecution" because "the intervening independent actions of the court or prosecutor" break the causal chain. *Weiner*, 90 F. Supp. 3d at 36–37. In such circumstances, the claim survives only if a plaintiff's case fits one of two exceptions: (a) the officer "continued to take an active part in the proceedings, beyond participation as [a] mere witness[], by insisting on or urging the continuation of what [he or she] knew to be a groundless prosecution," or (b) the officer, after "initiating or procuring the charges in good faith," subsequently "learn[ed] that the accused is innocent" and "fail[ed] to take reasonable steps to correct the record." *Nickey v. City of New York*, 2013 WL 5447510, at *8 (E.D.N.Y. Sept. 27, 2013), *on reconsideration in part sub nom. Nickey v. Coward*, 2016 WL 324959 (E.D.N.Y. Jan. 26, 2016), *aff'd sub nom. Nickey v. Carboine*, 682 Fed. App'x

78 (2d Cir. 2017); Restatement (Third) of Torts: Liab. for Econ. Harm § 21 cmt. e (Am. L. Inst. 2020);[4] *see Burt v. Aleman*, 2008 WL 1927371, at *5 n.3 (E.D.N.Y. Apr. 30, 2008).

Plaintiff's attempt to pin liability on Ruvolo under the first exception is not persuasive. Though Plaintiff has demonstrated a genuine question of material fact concerning Federico's active participation in the prosecution, *see infra* Discussion Section II.C, Plaintiff has not demonstrated the same with respect to Ruvolo. *E.g.*, *Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 131 (N.Y. App. Div., 1st Dep't 1999) ("Plaintiff cannot show that [defendant] played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." (internal quotation marks omitted)). Plaintiff contends, "[a]lthough the [prosecutor's] notes about being pressured refer to [Federico], a reasonable inference can be made that [Ruvolo], as the lead detective who met with Federico on several occasions, was a part of and approved the active pressure on the prosecutor." Pl. Sur-Reply to Nassau at 2 [DE 79]. This inference, however, is not reasonable – the record, including the portions cited by Plaintiff, contradicts it altogether. Ruvolo

---

[4]     *Dirienzo v. United States*, a case cited by nearly every federal court analyzing claims of malicious continuation of prosecution under New York law, relied on the Restatement (Second) of Torts § 655 comment c to hold that liability turns on "active part[icpation] in the proceedings." 690 F. Supp. at 1158–59. The Third Restatement has expressly "depart[ed] from" comment c, however, recognizing liability can attach where "a party who procured proceedings [keeps] silent after learning of facts that show[] the innocence of the accused." Restatement (Third) of Torts: Liab. for Econ. Harm § 21 Reporter's Note e (Am. L. Inst. 2020). In its view, defendants owe "a duty to take reasonable steps to correct the record in those circumstances." *Id.* The Court analyzes both Restatements' bases of liability.

testified he spoke with the prosecutor only on the night of Plaintiff's arrest, did not recall the prosecutor asking about offering Plaintiff a plea, and did not later meet with the her.  (Ruvolo Tr. at 40:6–41:12, 42:20–43:2, 77:23–78:10).  Ruvolo did not indirectly pressure the prosecutor through Federico.  The "four or five" times Ruvolo and Federico subsequently discussed Plaintiff's arrest consisted of Ruvolo "checking on [Federico's] injuries" and asking him if he was "back at work" or "suffering anymore."  (*Id.* at 45:7–46:11).  Ruvolo did show Federico the red light footage once "in passing," but their "whole conversation" was "Hey, I got the video, you want to take a look?"  (*Id.* at 88:9–23).  "The record is bereft of any evidence showing that [Ruvolo] insisted upon or urged further prosecution of Plaintiff after his arrest."  *See Burt*, 2008 WL 1927371, at *6; *Dirienzo*, 690 F. Supp. at 1158–59.  Plaintiff's conjecture and speculation is insufficient to withstand Ruvolo's motion for summary judgment.  *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)); *cf. Grant v. Barnes & Noble, Inc.*, 284 A.D.2d 238, 239 (N.Y. App. Div., 1st Dep't 2001) ("Plaintiffs' speculation that [defendant] may have acted more culpably than the record indicates is insufficient to raise a triable issue of material fact" on their malicious prosecution claim.).

Plaintiff's resort to the second exception likewise fails as a matter of law.  Plaintiff fails to point to evidence in the record enabling him to carry his burden of showing Ruvolo learned Plaintiff was innocent and failed to take reasonable steps to correct the record.  Plaintiff argues Ruvolo "reviewed th[e red light traffic] footage," "discussed it with" Federico, and yet "took no action to protect Plaintiff from being

falsely prosecuted." Pl. Opp. to Nassau at 6; Pl. Sur-Reply to Nassau at 2. Even if the red light footage could be construed as exculpatory evidence, Plaintiff incorrectly contends that Ruvolo "made no effort" to correct the record. *See* Pl. Opp. to Nassau at 2; Pl. Resp. to Nassau 56.1 at 22 ¶ 8. Ruvolo *did* act: he forwarded the footage to the prosecutor. Pl. Resp. to Nassau 56.1 at 20–21 ¶ 6 ("Defendant Ruvolo gave the video recording to the District Attorney's Office in or about December 2016."). "[T]here is simply no basis for inferring that [Ruvolo] intentionally, let alone maliciously, suppressed" exculpatory evidence or "otherwise wrongfully maintained a prosecution [he] knew to be without merit." *See Akande v. City of New York*, 275 A.D.2d 671, 672 (N.Y. App. Div., 1st Dep't 2000) (affirming judgment notwithstanding jury's verdict of malicious prosecution liability against police). That Plaintiff's "prosecution continued for approximately [eleven months][5] after [Ruvolo] received the" footage is no fault of Ruvolo's – Ruvolo had forwarded the footage to those in control of the prosecution some eight months prior. Pl. Sur-Reply to Nassau at 2; *see, e.g.*, *Dirienzo*, 690 F. Supp. at 1158–59 ("The decision to continue and then to decline prosecution of plaintiff was made by the Assistant United States Attorney assigned to the case, approved by his superior. There is nothing to suggest that this decision was resisted by any [defendant] FBI agent. Plaintiff has presented nothing to rebut

---

[5]     Plaintiff calculates the interval between Ruvolo receiving the footage and forwarding it to the prosecutor as "approximately nine months." In his Rule 56.1 Counter Statement to Nassau, however, he asserted that Ruvolo "obtained a copy of the red-light camera video recording in or about September 2016," that Ruvolo "gave the video recording to the District Attorney's Office in or about December 2016," and that "Plaintiff's charges were dismissed" on "August 17, 2017." Pl. 56.1 Counter Statement to Nassau ¶¶ 4, 6, 8.

the inference that control of the prosecution of plaintiff after his arrest passed wholly into the hands of the United States Attorney's Office and that any decision to continue his prosecution was made independently by that office." (citations and footnotes omitted)).

Accordingly, summary judgment shall be granted in Ruvolo's favor on Plaintiff's malicious prosecution claim under federal and state law.

### B.   Claims Against Nassau County

As against Nassau County, Plaintiff pursues a "malicious prosecution claim pursuant to [the] state law" doctrine of *respondeat superior*.  Pl. Opp. to Nassau at 3, 8.  Here, "there is no basis for a claim of municipal liability [against Nassau County] because Plaintiff has not alleged a viable [malicious prosecution] claim against" its employee, Ruvolo.  *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 170 (E.D.N.Y. 2018); *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 546 (N.Y. 1980) ("[T]here can be no vicarious liability on the part of the employer if the employee himself is not liable . . . .").  Accordingly, summary judgment shall be granted in favor of Nassau County.

### C.   Claims Against Federico

As against Federico, Plaintiff pursues claims for excessive force under § 1983, false arrest under § 1983, fabrication of evidence under § 1983, malicious prosecution under both § 1983 and state law, and abuse of process under § 1983.  Pl. Opp. to RVC at 2.  The Court begins with Federico's qualified immunity before analyzing each claim.  *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) ("Because

qualified immunity is an immunity from suit—not merely an immunity from judgment—assertions of qualified immunity should be addressed as early as possible in the judicial process.").

### 1. Qualified Immunity

"Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted).  At summary judgment, the Court must "assess[] whether 'under clearly established law, every reasonable officer would have concluded that [Federico's] actions violated [Plaintiff's constitutional] rights in the particular circumstance presented by the uncontested facts and the facts presumed in [Plaintiff's] favor.'" *Cugini v. City of New York*, 941 F.3d 604, 615 (2d Cir. 2019) (quoting *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017)).  If "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the [Federico's] conduct under the circumstances," then he has qualified immunity. *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Federico circumscribes his qualified immunity argument to whether his "use of force was objectively unreasonable in light of the facts and circumstances

confronting him without regard to his underlying intent or motivation." Federico Opening at 18 [DE 69-3]; Federico Reply at 9 [DE 71]. That formulation reflects the question of qualified immunity applicable as to Plaintiff's excessive force claims. *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003); *O'Brien v. Barrows*, 556 Fed. App'x 2, 4 (2d Cir. 2014). It is not the question applicable to the false arrest, malicious prosecution, fabrication of evidence, and abuse of process claims. *Jenkins*, 478 F.3d at 87 (false arrest); *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 216–18 (2d Cir. 2000) (malicious prosecution); *Chillemi v. Town of Southampton*, 2017 WL 6520722,at *18–20 (E.D.N.Y. Dec. 20, 2017) (Bianco, J.) (fabrication of evidence); *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011) (Bianco, J.) (abuse of process). Without an argument to those ends, the Court limits its analysis to Federico's qualified immunity from the excessive force claim.

The parties do not dispute that the Fourth Amendment protection against the use of excessive force is clearly established. *See* Pl. Opp. to RVC at 20. Their disagreement centers on whether a constitutional violation occurred. This "threshold question" turns on "whether the alleged use of excessive force was objectively reasonable." *Cowan*, 352 F.3d at 761. Qualified immunity extends to "claims that an officer made a reasonable mistake of fact that justified the use of force" due to "the sometimes hazy border between excessive and acceptable force." *Id.* at 761; *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

To determine whether the use of force is objectively reasonable, courts look at the "facts and circumstances" confronting the officer at the time, not from hindsight, and "without regard to the officers' underlying intent or motivation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Relevant considerations specific to "each particular case[] includ[e] the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Id.* (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)).

According to Federico, Plaintiff allegedly "ignored verbal commands to turn off the motorcycle and violently struck [Federico] with the motorcycle" in an attempt to flee. Federico Reply at 9; *see* Federico Opening at 18. Federico contends his subsequent use of force—pushing Plaintiff, causing the two to fall to the ground, pulling out his service revolver when Plaintiff "immediately jumped up from the ground," and ultimately handcuffing Plaintiff—was reasonable in light of the "tense and fast-moving attack" and the "immediate and direct threat" to the community. Federico Opening at 15; Federico Reply at 5. But Plaintiff presents an irreconcilable view on "the underlying circumstances leading up to and during the arrest." Pl. Opp. to RVC at 13–14, 21. Plaintiff contends Federico drove his police vehicle up to Plaintiff, turned on its lights "as he approached from the side" and immediately exited. He pushed Plaintiff off the motorcycle, which caused it to suddenly jerk forward because Plaintiff's hand rested on the throttle. In Plaintiff's view, he did not provoke Federico, "posed no threat," and was given no opportunity to comply with any

directives.  *Id.*  Plaintiff argues Federico's use of force was therefore unreasonable.

What actually happened is a question best left to factfinder.  The video evidence is not so clear as to corroborate either party's version of events.  The remainder of the evidence, when examined with a Plaintiff-favorable light, establish a totality of circumstances that do not justify Federico's use of force.  While "not every push or shove is excessive force sufficient to create a fourth amendment violation," *Calamia v. City of New York,* 879 F.2d 1025 (2d Cir. 1989) (internal quotation marks omitted), a reasonable jury could determine Federico's actions reflect excessive force, *see, e.g.*, *Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 614 (S.D.N.Y. 2017) ("Courts have consistently held that an unprovoked assault on a citizen is clearly constitutionally impermissible under existing law."); *Hill v. Miller*, 878 F. Supp. 114 (N.D. Ill. 1995) (denying summary judgment where plaintiff claimed not to speed and not to resist arrest but was nonetheless pushed up against police vehicle several times); *Medlin v. City of New York*, 1990 WL 186232, at *3–4 (E.D.N.Y. Nov. 20, 1990) (denying summary judgment where officer grabbed plaintiff, causing him "to turn his front [bicycle] wheel slightly" and to fall off, because the severity of the crime, risk of flight, and threat to the officer's safety was disputed); *see also Cox v. Fischer*, 248 F. Supp. 3d 471, 483 (S.D.N.Y. 2017) (one punch, unprovoked, was not objectively reasonable force where arrestee did not make a threatening gesture or otherwise resist arrest).

True, Federico describes a scenario diametrically opposed to Plaintiff's version of events.  But "[w]here the circumstances are in dispute" due to "contrasting

accounts" regarding the reasonableness of force, "a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002); *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) ("[T]he parties' versions of the facts differ markedly and '[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.'" (quoting *Thomas*, 165 F.3d at 143)). "In a cause of action for excessive force, 'resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and are properly not decided by the district court on summary judgment." *Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 568 (S.D.N.Y. 1993). "Looking at only [Plaintiff's] version of the events [] suggests that no reasonable officer in [Federico's] position would have believed" his use of force was objectively reasonable. *See Cowan*, 352 F.3d at 763.[6]

Due to these material issues of fact, the Court's analysis of Federico's qualified immunity must await the jury's factual determination on what actually occurred. Federico's motion to this end is denied.

---

[6]     Federico's contention that he had "probable cause to arrest" Plaintiff is inapposite to the analysis of qualified immunity from excessive force claims. Unreasonable actions during an arrest can deprive police officers of qualified immunity from excessive force claims, notwithstanding a finding of qualified immunity from false arrest claims on the basis of arguable probable cause to arrest. *Alicea v. City of New York*, 2016 WL 2343862, at *6 n.3 (S.D.N.Y. May 3, 2016). Even if it was pertinent, there are material questions of facts as to whether Federico had probable cause to arrest Plaintiff. *See infra* Discussion Section II.C.3.

## 2.  Excessive Force

The same issues of fact in the above qualified immunity analysis preclude granting summary judgment to Federico on the § 1983 excessive force claim's merits. *See Abate v. Vasta*, 2016 WL 1043091, at *10 (S.D.N.Y. Mar. 8, 2016) (Davison, M.J.) ("[T]he same factual disputes which preclude summary judgment on the ground that plaintiffs cannot establish their false arrest and excessive force claims also preclude summary judgment on the ground of qualified immunity."). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).  As above, "the conflicting accounts as to whether" Federico or Plaintiff "initiated the use of force requires a "[r]esolution of credibility" for the jury and not the district court on summary judgment. *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).  Accordingly, Federico's motion with respect to the § 1983 excessive force claim is denied.

## 3.  False Arrest

Plaintiff seeks to hold Federico liable under § 1983 for false arrest, a claim whose elements "are 'substantially the same' as the elements of a false arrest claim under New York law." *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)).  "Under New York law, the elements of a false arrest . . . claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (internal quotation marks omitted)

Federico contends he had probable cause to arrest Plaintiff, which "'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)), *as amended* (Dec. 4, 2012). "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* (ellipses and alterations omitted). The "inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "Probable cause requires only a probability, or a substantial chance of criminal activity, not an actual showing of criminal activity." *Marino v. Reina*, 2007 WL 632373, at *3 (E.D.N.Y. Feb. 27, 2007) (internal quotation marks omitted). "If the issue of probable cause is 'predominantly factual in nature,' then it is 'properly presented to the jury.'" *Barksdale v. Colavita*, 506 Fed. App'x 82, 84 (2d Cir. 2012) (quoting *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994)).

Plaintiff begins his argument that the subsequent dismissal of his charges is "strong proof that probable cause did not exist for an arrest." Pl. Opp. to RVC at 9. Not so. "The fact that charges against an arrestee are eventually dropped, or that he is acquitted after trial, has 'no bearing on the determination of whether probable

cause existed to arrest him.'" *Rinaldi v. City of New York*, 756 F. Supp. 111, 115 (S.D.N.Y. 1990) (quoting *Krause v. Bennett*, 887 F.2d 362, 370 (2d Cir. 1989)); *Bennett v. Vidal*, 267 F. Supp. 3d 487, 496 (S.D.N.Y. 2017). The subsequent dismissal on speedy trial grounds does not inform the analysis on the facts available to the officer at the time of the arrest. *Ramos v. City of New York*, 2017 WL 3267736, at *5 & n.4 (S.D.N.Y. July 31, 2017) (refusing to "consider the criminal court's dismissal of the indictment on speedy trial grounds in its probable cause analysis")..

Federico contends probable cause to arrest arose from Plaintiff doing 80 mph in a 30-mph zone and attempting to flee; Plaintiff argues he was doing at most 40 mph and did not attempt to flee. Probable cause to arrest Plaintiff thus depends on the version of the facts accepted by the jury. Both have versions have testimonial support and neither can be corroborated as a matter of law by the red-light camera footage. A similarly "sharp dispute as to the nature of [the arrestee's] conduct" led the Second Circuit in *Weyant v. Okst* to reverse a grant of summary judgment premised on a finding of probable cause applicable to a false arrest claim. 101 F.3d at 855. It is not for the district court "to credit [a] version of the facts and enter judgment based on its own view that [one] version was more likely true." *Id.* "The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury." *Id.* Were a jury to credit Plaintiff's version, no probable cause to arrest Plaintiff existed.

Federico's reiteration that, at the time of the arrest, (i) Plaintiff was the subject of an active bench warrant and (ii) Plaintiff operated "the motorcycle without a valid

motorcycle license or a valid NYS driver's license" plays no role in the Court's probable cause analysis.   Federico cites no evidence suggesting these facts  were "among the facts known by [him] at the time of the arrest." *Underwood v. City of New York*, 2018 WL 1545674, at *3 (E.D.N.Y. Mar. 28, 2018) ("[Plaintiff] was under arrest for hours before the warrant was discovered and the warrant played no part at all in his arrest. . . .  It defies logic to suggest that the discovery of an arrest warrant can break the causal chain for an arrest that has occurred ex ante.").

### 4.    Fabrication of Evidence

To hold Federico liable for fabrication of evidence under § 1983, plaintiff must establish in part that (1) Federico created false information, (2) Federico forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) Plaintiff suffered a deprivation of life, liberty, or property as a result of Federico's actions.  *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021).  Notwithstanding the third element, the claim is "available to a defendant even if the underlying criminal charges are dismissed and the fabricated evidence is never presented at trial."  *Id.* (citing *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231 (2d Cir. 2020)).

The allegedly fabricated evidence is Federico's "lie[s] about [Plaintiff] committing traffic violations[] and that [Plaintiff] tried to assault [Federico] and flee the scene."  Pl. Opp. to RVC at 15.  Indeed, the Second Circuit has observed that "fabricated information" may consist of "nothing more or less than a false account of something the officer claimed to have seen or heard the defendant say, which he

forwarded to prosecutors and to which he would be expected to testify at trial." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (discussing the parallel basis for liability asserted in *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997)).  Plaintiff "need only produce some evidence showing that the officer's statement or evidence is false or manipulated," *Loftin v. City of New York*, 2017 WL 3614437, at *8 (E.D.N.Y. Aug. 21, 2017), and the Second Circuit has held that deposition testimony suffices, *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) ("Although there was certainly not overwhelming evidence of falsification, a reasonable jury would be entitled to credit [plaintiff's] testimony and reject [defendant's]."). Plaintiff has so testified to that end – that the events leading up to his arrest were nothing like those Federico reported. *See* Pl. 50-h Tr. 51:17–54:3; Pl. Deposition Testimony at 60:19–62:12, 108:2–10 ("Pl. Dep. Tr."), Ex. P [DE 65-19] to Brewington Decl.

Whether Federico lied about the events leading up to Plaintiff's arrest cannot be decided as a matter of law and is a question of fact for the jury. Federico's motion for summary judgment on the fabrication of evidence claim is denied.

### 5. Malicious Prosecution

Plaintiff purports to bring malicious prosecution claims against Federico under both New York state law and § 1983. Federico points out that Amended Complaint does not have a heading dedicated to a malicious prosecution under state law and contends the Court should permit Plaintiff only to pursue the claim under § 1983 and not state law. His argument is deficient in two respects. First, he simply adopts—

with no further analysis—his co-defendant Rockville Centre's arguments.   But Plaintiff's failure to plead state law malicious prosecution against Rockville Centre absolves Rockville Centre only from liability under *respondeat superior* – a form of secondary liability.   *See infra* Discussion Section II.D; *see also Doe v. Bloomberg, L.P.,* 36 N.Y.3d 450, 460 (N.Y. 2021) ("[R]espondeat superior is a form of secondary liability . . . .").   Federico faces primary liability.   Second, Federico acknowledges that Plaintiff pleaded a § 1983 malicious prosecution claim.   By consequence, then, Defendants had notice of the substance of a state law claim as well:   "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff . . . must establish the elements of a malicious prosecution claim under state law."   *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)).   Federico implicitly recognizes as much; he quotes the principle in defending against the § 1983 malicious prosecution claims.   *See* Federico Reply at 6 (quoting *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 441 (S.D.N.Y. 2016)).

Malicious prosecution claims under § 1983 and New York state law require Plaintiff to show (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."   *Frost*, 980 F.3d at 242.   Federico challenges the claim only as to its third element:   "[P]robable cause existed for the arrest of [P]laintiff such that the [P]laintiff's malicious prosecution claim asserted against [Federico] should be

dismissed." Federico Opening at 15; Federico Reply at 6. But "[p]robable cause is assessed 'at a different point in time in a malicious prosecution action than a false arrest action where the prosecution follows a warrantless arrest.'" *Allen v. Antal*, 2014 WL 2526977, at \*18 (S.D.N.Y. Mar. 13, 2014) (quoting *Peterson v. Regina*, 2013 WL 1294594, at \*10 (S.D.N.Y. Mar. 28, 2013)), *aff'd*, 665 Fed. App'x 9 (2d Cir. 2016); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) ("[T]he relevant probable cause determination" in a malicious prosecution action "is distinct from the question of whether there was probable cause for the arrest . . . ."). In any event, probable cause at the time of arrest reflects a question of fact sufficient to preclude granting summary judgment to Federico. *See supra* Discussion Section II.C.3.

Federico's motion for summary judgment as to the § 1983 and state law malicious prosecution claims is denied.

### 6.    Abuse of Process

For his § 1983 abuse of process claim, Plaintiff must establish the elements of the claim under New York state law, which "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks omitted); *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) ("When a plaintiff asserts an abuse-of-process claim under Section 1983, [the court] turn[s] to state law to find the elements . . . ."(internal quotation marks omitted)).

Federico begins by suggesting the probable cause to arrest Plaintiff vitiates his abuse-of-process claim. Whether he is right as a matter of law remains an open question under Second Circuit case law. *See Mangino*, 808 F.3d at 958–59 (observing "considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law" but declining to "resolve th[e] confusion"). Nonetheless, probable cause to arrest here is a matter for the jury. *See supra* Discussion Section II.C.3.

Federico next contends no evidence supports the first element, namely, that he used legal process to compel Plaintiff to perform or forbear from some act. But "[b]ringing a defendant before a judge for arraignment satisfies the first element," *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994)), *abrogation on other grounds recognized in In re Nassau Cnty. Strip Search Cases*, 639 Fed. App'x 746 (2d Cir. 2016), and Plaintiff underwent arraignment on August 5, 2016, Ex. J to Brewington Decl.

Federico continues, no evidence suggests he intended to do harm without excuse or justification – *i.e.*, no evidence supports the second element. "A lack of probable cause 'gives rise to an inference of malice, supporting a finding of intent to harm.'" *Smith v. Cnty. of Nassau*, 2015 WL 1507767, at *17 (E.D.N.Y. Mar. 31, 2015) (quoting *Sforza v. City of New York*, 2009 WL 857496, at *17 (S.D.N.Y.2009)), *aff'd*, 643 Fed. App'x 28 (2d Cir. 2016); *Phelps v. City of New York*, 2006 WL 1749528, at *5 (S.D.N.Y. June 27, 2006) ("[T]he absence of probable cause is probative of the lack of justification for the officers' actions . . . ."). As discussed, the existence of probable

cause presents a genuine issue of material fact.  If there was no probable cause, an inference supporting a finding of intent to harm arises.

Federico, addressing the third element, views the evidence not to support a collateral objective outside the legitimate ends of process he allegedly pursued.  "To the meet this element, [Plaintiff] must prove not that [Federico] acted with an improper motive, but rather an improper purpose—that is, he must claim that [Federico] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009).  Currying favor amongst one's colleagues reflects one such collateral purpose. *Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013) ("[T]o curry favor . . . and to further his friendship" with others are "quintessential collateral objective[s] required for a claim of abuse of process."); *Jovanovic v. City of New York*, 2006 WL 2411541, at *12 n.4  (S.D.N.Y. Aug. 17, 2006) ("[M]otives such as protecting one's own job or currying favor with prosecutors may exceed mere malice and may constitute a 'collateral objective.'").  According to Plaintiff, Federico bragged to his colleagues "as if he did something heroic or . . . as if he took down some animal."  Pl. Dep. Tr. at 113:9–114:9; Pl. 50-h Tr. at 152:3–153:17.  Such evidence creates an issue of fact in the third element of Plaintiff's abuse of process claim.

Federico's motion for summary judgment on Plaintiff's abuse of process claim is denied.

### D.    Claims Against Rockville Centre

As against Rockville Centre, Plaintiff "pursues a state law malicious prosecution claim." Pl. Opp. to RVC at 2.

To the extent Plaintiff seeks to impose primary liability on Rockville Centre for malicious prosecution under state law, his claim fails. "[I]t is well established under New York law that a village is not liable for malicious prosecution where it does not prosecute the plaintiff." *Jackson v. Nassau Cnty.*, 2021 WL 3207168, at *22 (E.D.N.Y. July 28, 2021); *O'Dell v. County of Livingston*, 174 A.D.3d 1307, 1308 (N.Y. App. Div., 4th Dep't 2019) ("Inasmuch as the Village did not prosecute plaintiff, the Village cannot be sued for malicious prosecution."); *Roche v. Village of Tarrytown*, 309 A.D.2d 842, 843 (N.Y. App. Div., 2d Dep't 2003) ("[S]ince the Village did not prosecute Roche, the Village cannot be charged with malicious prosecution."). The evidence affirmatively establishes that Nassau County, not Rockville Centre, prosecuted Plaintiff. *See, e.g.*, Ex. J to Brewington Decl. Rockville Centre therefore cannot face primary liability for malicious prosecution under New York state law.

To the extent Plaintiff seeks to impose secondary liability on Rockville Centre for malicious prosecution the claim also fails. "[M]unicipalities may be liable, under the doctrine of *respondeat superior*, for the common law torts, such as . . . malicious prosecution . . . committed by their employees. *Lepore v. Town of Greenburgh*, 120 A.D.3d 1202, 1204 (N.Y. App. Div., 2d Dep't 2014) (retaining allegations of vicarious liability against Town for the actions of its police officer employee). Such liability for "the conduct of a member of its police department," for example, hinges on whether

"the officer was engaged in the performance of police business." *Rosario v. City of New York*, 2019 WL 4450685, at *8 (S.D.N.Y. Sept. 16, 2019) (quoting *Maloney v. Rodriguez*, 156 A.D.3d 1404, 1405 (4th Dep't. 2017)).   Nothing in the Amended Complaint's discussion of malicious prosecution placed in issue Federico's actions with respect to the scope of his police duties. *See, e.g.*, Pl. Opp. to RVC at 19 (quoting allegations concerning primary liability for malicious prosecution under state law, but not liability under *respondeat superior*).   Rather, the Amended Complaint is silent to that end. *See* Am. Compl. ¶¶ 75–98 (§ 1983 malicious prosecution allegations).   The Amended Complaint instead concerns itself with municipality liability over malicious prosecution claims under § 1983 claims—evidence of an unconstitutional policy or custom—which, as Rockville Centre correctly notes, is incompatible with that under state law.   RVC Reply at 5–7; *see Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) (Sotomayor, J.) ("[A] city cannot be held liable under § 1983 on a theory of *respondeat superior*.").   Discovery closed almost a year ago, and Rockville Centre— not on notice of potential *respondeat superior* liability—did not conduct discovery to that end.   It is too late in the day and unduly prejudicial to Rockville Centre to re-open discovery so that it may defend against claims asserted for the first time in opposition to summary judgment.   *See* RVC Reply at 5–7.

Summary judgment shall be granted in Rockville Centre's favor.

**CONCLUSION**

For the reasons discussed above, Siraco, Murphy, and Dolan's motions for summary judgment are denied as moot. Rockville Centre, RCPD, Nassau County, NCPD, and Ruvolo's motions for summary judgment are granted. Federico's motion for summary judgment is denied.


**SO ORDERED.**


Dated: Central Islip, New York            s/ Denis R. Hurley
       February 22, 2022            Denis R. Hurley
                                      United States District Judge